PETERS v. MERCHANTS' & FARMERS' BANK OF PONCHATOULA, LA.

(Circuit Court of Appeals, Sixth Circuit. November 27, 1906.)

No. 1,538.

1. GUARANTY—CONSTRUCTION OF CONTRACT.

Defendant became guarantor of loans to be made by plaintiff bank to a third party to the amount of $10,000. When plaintiff had in fact lent such party an amount in excess of $10,000, defendant by telegram and letters authorized a further extension of credit on his guaranty to the extent of $2,000, "making $12,000, all told." It did not appear that he had any knowledge that the amount then owing exceeded the $10,000 guarantied by him. *Held*, that the second guaranty did not cover such excess, but only such amount as was thereafter lent, not exceeding $2,000.

2. SAME—CONSIDERATION.

The making of further loans by a bank to a debtor, at the request of a guarantor, is a sufficient consideration for a guaranty of the prior indebtedness.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 25, Guaranty, § 14.]

3. SAME—RIGHTS OF GUARANTOR—APPLICATION OF MONEY COLLECTED FROM PRINCIPAL.

Where a bank, which held a mortgage securing a part of a customer's indebtedness, another part being secured by defendant's guaranty, and still another part being unsecured, obtained a judgment against the principal debtor for the whole indebtedness, reserving its right to proceed on the mortgage, the fact that it sold the mortgaged property under an execution on the judgment, instead of foreclosing the mortgage, was not prejudicial to defendant, and did not deprive the bank of the right to apply the proceeds in payment of the mortgage debt; but it was required to apply any surplus pro rata on the entire remaining indebtedness.

In Error to the Circuit Court of the United States for the Western District of Michigan.

S. E. Knappen, for plaintiff in error.

C. M. Wilson, for defendant in error.

Before LURTON and SEVERENS, Circuit Judges, and COCHRAN, District Judge.

SEVERENS, Circuit Judge. Thompson and Ackley united in a partnership under the style of the Ponchatoula Lumber Company, and on or about November 17, 1903, engaged in the business of manufacturing and selling lumber and kindred products at Ponchatoula, La., and for those purposes required money. They borrowed, at some date prior to January 12, 1904, the sum of $200 of the Merchants' & Farmers' Bank of Ponchatoula, for which they gave their note payable on demand. On the said 12th of January the bank being unwilling to make further loans to the lumber company without security, R. G. Peters, the plaintiff in error, telegraphed to the bank as follows:

"Chicago, Ill., January 12, 1904.
"Merchants' & Farmers' Bank, Ponchatoula, La.
"I will guarantee $10,000 credit to Ponchatoula Lumber Co.
"R. G. Peters."

On the faith of this telegram, the bank, prior to the 19th of that month made further loans to the lumber company to the extent of $1,-600. On that day Peters, in confirmation of his telegram, as the declaration alleges, executed a more formal guaranty to the bank as follows:

"Ponchatoula, La., Jan. 19, 1904.
"The Merchants' & Farmers' Bank, Ponchatoula, La.
"Gentlemen: I hereby guaranty to you the payment to the extent of $10,-000.00 of any and all notes, drafts, bills of exchange, checks, credits, discounts, overdrafts, etc., of the Ponchatoula Lumber Company, or bearing their endorsement, which have been or may be accepted by you and credited to their account. This guaranty to remain in full force and effect until you shall have received from me notice of its withdrawal, which notice however, shall not affect any notes, drafts, bills of exchange, checks, credits, discounts, overdrafts, etc., not paid at the time of the receipt by you of such notice.
"Yours respectfully,      R. G. Peters."

And on the faith of these guaranties the bank made further loans to the lumber company until March 10, 1904, when the amount, including the $1,600, and also including the $200 loaned before the first guaranty was given, had reached $10,000 as the declaration states, but as the finding of the judge is, $10,682. On the day last mentioned, Peters sent to the bank the following telegram:

"East Lake, Mich., 3—10—1904.
"Merchants' & Farmers' Bank, Ponchatoula, La.
"Extend credit Ponchatoula Lumber Company to $12,000 temporary.
"R. G. Peters."

On the day following he sent this letter:

"Manistee, Mich., March 11, 1904.
"Merchants' & Farmers' Bank, Ponchatoula, La.
"Gentlemen: Confirming my telegram of yesterday, you are authorized to grant Mr. Thompson credit upon my guaranty for two thousand dollars more as he requests it, temporarily, making $12,000 all told.
"Yours respectfully,      R. G. Peters."

And on March 15, 1904, he sent to the bank the following letter:

"Manistee, Mich., March 15, 1904.

"Merchants' & Farmers' Bank, Ponchatoula, La.

"Gentlemen: In reply to yours of 11th inst., will say that my guaranty for $2,000 more credit to the Ponchatoula Lumber Company, making $12,000, will hold good until they are able to pay the $2,000 as you outline in your letter.

"Yours respectfully,                                    R. G. Peters."

The declaration states that the bank accepted the last-mentioned telegram and these two letters of March 10th and March 15th "as the guaranty of said defendant for loans to said Thompson and Ackley doing business under the name of the Ponchatoula Lumber Company, to the amount of two thousand dollars ($2,000.00) in addition to the said loans to the amount of ten thousand dollars ($10,000.00)." After this extension the bank loaned the lumber company $1,500 more. None of the loans mentioned in the foregoing statements were repaid. This suit was brought on the guaranties of Peters to recover the amount of said loans. It further appears that another series of loans, quite independent of the loans guarantied by Peters as above stated, were made by the bank to the lumber company, commencing November 17, 1903, which were secured by the assignment to the bank of bills of lading on shipments of lumber to customers. These securities did not yield enough to satisfy the loans they were given to secure, and on August 8, 1904, the lumber company gave the bank a mortgage on its mill property for the balance due on this line of indebtedness, then estimated at the sum of $3,000. The sum actually due proved eventually to be $2,209.01. Prior to the giving of the last-mentioned mortgage, the lumber company had mortgaged the property to Peters for his indemnity; but, for the purpose of enabling the mortgagor to sell the property, Peters had released the mortgage. The sale was not effected, and, when Peters heard of the mortgage to the bank, he wrote to the latter a notification as follows:

"That must be applied on the guaranty loan; also any surplus that he [meaning Thompson] may be able to get for the mill in selling it."

There is nothing to show that the bank assented to this. Finally, the bank brought suit in a Louisiana court against the Ponchatoula Lumber Company to recover the balance due on both lines of indebtedness, and in its petition the bank noted, in connection with the averments touching the balance due on the line other than that guarantied by Peters, that the note for that balance was secured by a mortgage. The judgment of the court in favor of the bank was for $14,394.62 and interest, with costs. The judgment further provided that "the plaintiff's right to proceed on the $3,000 mortgage be reserved." Execution was issued, and the property sold; the net proceeds being $2,390.-79. In the sheriff's return to the execution, he stated that:

"The mortgage in favor of plaintiff in execution for $3,000, extinguished by confusion, is canceled; but the plaintiffs reserve all their rights against defendant in execution so far as not satisfied by this execution."

The bank applied the proceeds of the sale as follows: Paid itself the $2,209.17 balance due on the mortgage debt, and applied the re-

maining $181.78 to the excess of the lumber company's debt over the $12,000 guarantied by Peters.

The questions submitted to us on the hearing were these: (1) Was the $200 loaned to the lumber company before the original guaranty covered by either of the guaranties? (2) Was the excess beyond $10,000, which the bank had already loaned to the lumber company at the time of the further guaranty of March 10, 1904, covered by such further guaranty? (3) Had the bank the right to apply the proceeds of the sheriff's sale to the satisfaction of the balance due on the debt secured by the bills of lading? (4) Had the bank the right to apply the remaining $181.78 to the excess over $12,000 due on the other loans to the lumber company? The court below found all of these questions in the affirmative, and rendered judgment for the amount of $12,000, with interest and costs.

As to the $200 loan, whatever we might have said in regard to the guarantor's liability, if the question had been saved, we think we cannot examine it on this record. The only point made by the defendant below on this item was that there was no consideration for it. The exception to the court's conclusion of law was to the holding that "the loaning of further sums of money to the Ponchatoula Lumber Company pursuant to defendant's guaranty of January 12, 1904, was a sufficient consideration for the guaranty of the payment by the defendant of the $200 loaned to the company before the guaranty was made," which impliedly concedes that there was in fact a guaranty for that sum. It nowhere else appears that the contention that the item came within the scope of the guaranty was disputed. The objection actually made could not be maintained. The making of further loans was a sufficient consideration for a promise to pay a sum already advanced as well as the further loans.

With respect to the excess beyond $10,000 which the bank had loaned to the lumber company before March 10, 1904, we are constrained to think that the additional guaranty of that date was not intended to cover it. It is not found that Peters knew that such excess had been loaned, and what is not made to appear should be treated as not existing. In the absence of such information, he would reasonably have supposed that his guaranty had not been exceeded. In his telegram of March 10th he said: "Extend credit to Ponchatoula Lumber Company to $12,000." This language would seem to import future loans, which, with what he had already guarantied, might go to $12,000. The court below, not having regard to the letters which followed it, construed the telegram to cover former advances, whether they had been made upon a guaranty or not. This suggestion, however, might not be decisive. But in his letter of the following day, confirming his telegram, he makes it clear, as we should think, when he said:

"You are authorized to grant Mr. Thompson credit for two thousand dollars more as he requests it, making $12,000 all told."

This imports a guaranty upon a credit thereafter to be given. Then, in reply to a letter of the bank written on the day after the receipt of the telegram, he further says:

"My guaranty for $2,000 more credit to the Ponchatoula Lumber Company, making $12,000, will hold good until they are able to pay the $2,000."

And we think the bank correctly interpreted the telegram, with the explanatory letters, when in its declaration it averred that it accepted them "as the guaranty of said defendant for loans to said Thompson and Ackley, doing business under the name of the Ponchatoula Lumber Company, to the amount of two thousand dollars ($2,000.00) in addition to the said loans to the amount of ten thousand dollars ($10,-000.00)," and that the judge erred in ignoring the letters and holding that the telegram indicated a purpose to cover former advances not covered by his former guaranty. There is nothing in this correspondence to indicate that it was intended to cover previous loans, as was done in the guaranty given on January 19th, which was so expressed as to cover the advances which had been made before that date.

Then, as to the appropriation made by the bank of the proceeds of the sale on execution, the bank had a mortgage upon the property, and it obtained a judgment directing a sale, reserving to the bank the right to proceed upon the mortgage. But we are of opinion that the bank might waive this reservation and allow the sale to be made of the property without it, and appropriate the proceeds to the debt secured by the mortgage. The right of no one would be prejudiced by this course, and the indications from the sheriff's return and the appropriation of the proceeds of the sale by the bank are that the sale was of the entire estate in the property. If that was so, the appropriation was justifiable, if the mortgage was a valid one. Counsel for plaintiff in error argued in a somewhat vague way that, the release of the mortgage by Peters having been done for the purpose of enabling the lumber company to sell the property, it was inequitable for the bank to take advantage of the release and get a mortgage for its own benefit. But the failure to sell the property did not restore the mortgage, and there is no ground for holding that the mortgage to the bank is affected by the mortgage which Peters had, but released without reservation. His motive or object did not effect the consequences of the release.

In respect to the item of $181.78, it was misapplied. It should have been applied to all the indebtedness remaining unpaid, pro rata; that is to say, upon the sum loaned and guarantied by Peters, which was $11,-500, and the sum loaned by the bank in excess of $10,000 before the guaranty of March 10, 1901, was given, which was $682. It was proper to include interest in the judgment rendered by the court below.

The judgment will be reversed, with costs, and with directions to enter a judgment in conformity with this opinion.