In re FIRST NAT. BANK OF LOUISVILLE, KY.

FIRST NAT. BANK OF LOUISVILLE, KY., v. HOLT.

(Circuit Court of Appeals, Sixth Circuit.   June 17, 1907.)

Nos. 1,654, 1,655.

1. BANKRUPTCY—MODE OF REVIEW—ORDERS MADE IN BANKRUPTCY PROCEEDINGS.

An order made by a court of bankruptcy affirming an order of a referee setting aside an allowance of a secured claim, and requiring the creditor to pay to the trustee the amount of an unlawful preference, is one made in the bankruptcy proceedings proper, and is reviewable on petition for review, under Bankr. Act July 1, 1898, c. 541, § 24b, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3432].

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 915.

Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

2. SAME—VOIDABLE PREFERENCES—INTENT TO GIVE PREFERENCE.

To render a preferential payment received by a creditor from his debtor within four mo₁ ̇hs prior to the latter's bankruptcy voidable under Bankr. Act July 1, 1898, c. 541, § 60b, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445], as amended by Act Feb. 5, 1903, c. 487, § 13, 32 Stat. 799 [U. S. Comp. St. Supp. 1905, p. 689], the bankrupt must not only have been insolvent when the payment was made, but must have intended it as a preference, and, if in fact made in the ordinary course of business, without thought of injuring other creditors and in the belief in his ability to pay them all, the creditor receiving it cannot be charged with reasonable cause to believe that a preference was intended.

3. SAME.

The making of a present loan is a sufficient consideration for a transfer of collateral to secure not only such loan, but also a prior indebtedness, and, where such a transfer was made in good faith when the debtor was solvent, the right of the creditor to the securities attached at that time and collections subsequently made by it thereon and applied on the prior debt after the debtor became insolvent and within four months prior to its bankruptcy do not constitute voidable preferences.

Appeal from the District Court of the United States for the Western District of Kentucky.

Lawrence S. Leopold, for First Nat. Bank.

Herman H. Nettelroth, for trustee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge.   This case comes here by two methods for review—one by petition for review of an order made in the bankruptcy proceedings in Re R. M. Martin Company, and the other by an appeal from the same order in the respect that it is a decree in an

independent controversy arising in the course of a bankruptcy proceeding. The order complained of is one made by the referee and approved by the district judge setting aside an allowance of a secured claim of the First National Bank of Louisville, and requiring it to pay to the trustee $1,000 which, it was held, the bank had received from the bankrupt through an unlawful preference. The order was therefore one made in the bankruptcy proceedings proper, and not in an independent controversy arising in such proceedings, and is reviewable here upon the petition for review under section 24b of the Act of July 1, 1898 (30 Stat. 553, c. 541 [U. S. Comp. St. 1901, p. 3432]). Accordingly the appeal is dismissed.

The secured claim of the bank was for the sum of $16,200, which, of course, did not include the $1,000 in question. The facts as found by the referee and reported to the district judge for review are substantially as follows: In July, 1904, the bankrupt had become indebted to the bank to the amount of $10,000. It was not secured; and, being in want of more funds to continue its business, the bankrupt entered into an agreement with the bank to which one Johnson, the secretary of the bankrupt, was a third party, and which agreement, after reciting the desire of the bankrupt to procure a loan for use in its business upon the security of its book accounts with its customers and the undertaking of the bank to make such loan, witnessed that:

"Said second party shall execute and deliver to the order of said bank its note of even date herewith, for the amount of such loan and advance, and interest thereon, payable after date thereof, and as security for the payment of said note, said second party hereby sells, assigns and transfers to said bank and its assigns, the following accounts now outstanding upon said second party's books, and all moneys due and to become due thereon."

Here follows a list of accounts, giving names and addresses of debtors and the amounts and dates when due, and a receipt and agreement by Johnson as follows:

"Received of the First National Bank, Louisville, Ky., for collection, sundry, accounts receivable assigned to it by the R. M. Martin Company, Louisville, Ky., as per foregoing list.

"All collections of said accounts to be turned over to said bank as they are received by me.

"Charles L. A. Johnson."

Then the agreement proceeds to stipulate that:

"Said third party agrees, upon request of said bank, to collect the amount of said accounts, or any of them, as the agent of said bank, without any charge against said bank for such collections, and all payments on such accounts shall be entered in said book, and said third party shall immediately pay over and deliver to said bank or its assignees, the amounts of such collections, to be applied to the extinguishment of said note, and all checks, drafts and moneys so collected by said third party shall be and remain the property of said bank until a sufficient amount has been collected, and paid over to pay the total amount of said note and interest, and any other indebtedness of said second party to said bank and after said note and all other indebtedness of said second party to said bank shall have been fully paid and extinguished, the remainder of said accounts, if any, shall revert to, and become the property of said second party.

"In case of the insolvency or bankruptcy of said second party before the payment of said note and interest, or, in the event of any breach of any of the provisions of this contract by either said second party or said third party,

the agency, of said third party for the collection of such accounts shall at once cease and determine, without notice, and said bank shall then proceed to collect the remainder of such accounts so far as possible, and apply the proceeds thereof to the payment of said note and interest, to the payment of any other indebtedness of said second party to said bank, and after deducting the expense of collecting said accounts, shall hold the surplus, if any, subject to the order of said second party or its assigns.

"In witness whereof, the parties hereto have executed this agreement the day and year first above written.

"R. M. Martin Co.,<br>
"By R. M. Martin, President,<br>
"C. L. A. Johnson, Treasurer."

And from time to time thereafter, whenever the bankrupt required more funds, similar loans were made by the bank and upon like security and a like agreement with regard to the accounts of the bankrupt and the application of their proceeds. The particular advances by the bank were paid out of these proceeds and $4,000 of the old debt of $10,000 were also paid. Johnson kept an account in his own name with the bank of his deposits made from collections, but without any distinction of the particular accounts from which the deposits came. From time to time these deposits were turned over to the bank by check, the method being, as we understand, first by Johnson's check to the bankrupt and then by the check of the bankrupt to the bank.

During the four months preceding the filing of the petition in bankruptcy loans were made by the bank in this way to the amount of $16,200. One of these loans was of $2,000 made December 16, 1905. On the 13th of that month Johnson checked out of his account $1,000 to the bankrupt, and the bankrupt gave its check to the bank for that amount. The referee states the circumstances as follows:

"It was assumed by the bank that the remainder of the pledged accounts which were still uncollected would suffice to discharge the entire contemporaneously secured indebtedness, and it was then agreed that said Johnson, agent, should pay out of his deposit account the sum of $1,000 to the R. M. Martin Company, and that the R. M. Martin Company should thereupon pay $1,000 to said bank upon said old indebtedness aforesaid. The evidence shows that a check was drawn by Johnson, agent, for $1,000 payable to said bankrupt company. Said check was deposited by said company in its account with said bank, and thereupon said company drew its check against its account in said bank for $1,000 and thereby paid said sum to said bank, which gave credit upon said old debt therefor."

The referee further states that the evidence shows "that on and after December 1, 1905, the R. M. Martin Company was insolvent," and "that the officers of said bank had reasonable cause to believe that said company was then insolvent." From the facts that the evidence did not show whether the $1,000 paid by Johnson on December 13, 1905, was collected from accounts pledged after December 1, 1905, or whether it was realized from accounts pledged before that date, and that Johnson had so commingled his collections that separation of the proceeds was rendered impossible, the referee concluded that the presumption should be that the payment was made from the proceeds of the newly assigned accounts, upon the principle applied to the willful commingling of goods. We find nothing in the case as stated by the referee which would justify the application of such a rule. There is no reason for supposing that the commingling of the col-

lections was in disregard of the agreement of the parties or was made with any wrongful intention. It was not reasonable to charge the parties with knowledge that bankruptcy was impending or that some other condition was likely to arise in which it would be necessary to have so careful a record. But we shall not pursue this subject further, because of the graver error into which the referee fell. Nor do we need to settle the rights of the parties upon the footing of mutual credits between banks and their customers. The facts found did not justify the conclusion that there was any preference which was voidable by the trustee, even if it should be found that the payment of the $1,000 operated in the circumstances to effect a preference, as the referee thought it did.

The question whether this was a voidable preference which must be surrendered before the bank can be permitted to prove its claim depends upon the construction and effect of section 57g of the act. Before the amendment of that subdivision and of section 60a and section 60b, there was ground for holding that section 57g made voidable all preferences which were declared such by section 60a. Before the amendment section 57g was not restricted, and so was open to the inference of a wide reference to section 60a for a complement, and that the two provisions by their association would render any payment or transfer a voidable preference which if made in the circumstances mentioned in section 60a, would enable the particular creditor to obtain an advantage over other creditors of the same class. This was so held in Pirie v. Chicago T. & T. Co., 182 U. S. 438, 21 Sup. Ct. 906, 45 L. Ed. 1171, in a cause which arose prior to the amendment. But upon a recognition of the embarrassments which business men might suffer upon that rule of law in the collection of their debts, Congress in 1903, passed the amendment. And the amendment of section 57g makes only those preferences voidable which are made so by section 60b, or by 67e, which latter refers only to conveyances made with intent to defraud creditors or rendered invalid by some statute of the state; and that reference need not be further noticed. Section 60b, thus referred to, makes transfers voidable by the trustee when the creditor has reasonable cause to believe that the debtor intends thereby to create a preference. The nearest approach toward this requirement here is that for two weeks the debtor had been insolvent, and the officers of the bank had reasonable cause to believe the company was insolvent. A man is insolvent, as that term is defined by the fifteenth subdivision of section 1 of the act, whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, with intent to defraud, hinder, or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts. But, to make the reception of payment a preference, the creditor must have had reasonable cause to believe that the debtor was intending to give him a preference over other creditors, and we incline to think, with the Circuit Court of Appeals for the First Circuit (Hardy v. Gray, 144 Fed. 922, 925, 75 C. C. A. 562), that the reasonable implication of the language is that the debtor himself must have intended the preference. The very word signifies the doing of a thing with a purpose to give

an advantage; and the construction which treats the motive of the debtor as indifferent seems artificial and awkward. But it is enough to say that a belief that a debtor is insolvent is a very different thing from a belief that he intends a preference; for it would often, and probably generally, happen that a person, though in fact insolvent, would while continuing his business in the usual way make payments without a thought of disparagement of other creditors and with confidence in his ability to pay them all. And upon like considerations the creditor may share in the confidence of his debtor, and may well suppose that the debtor while paying him his debt in the common course of business is acting without any purpose of giving special favor. Such considerations have often been adverted to by the courts as the basis of decision, and were the principal motive for the amendment of 1903. Grant v. National Bank, 97 U. S. 80, 24 L. Ed. 971; Stucky v. Masonic Savings Bank, 108 U. S. 74, 2 Sup. Ct. 219, 27 L. Ed. 640; In re Eggert, 102 Fed. 735, 43 C. C. A. 1; Off v. Hakes, 142 Fed. 364, 73 C. C. A. 464; Hardy v. Gray, 144 Fed. 922, 75 C. C. A. 562; J. W. Butler Paper Co. v. Geombel, 143 Fed. 295, 74 C. C. A. 433; Loveland on Bank. (3d Ed.) § 194c.

Moreover, this appropriation of the $1,000 was made pursuant to a stipulation entered into at the time when the last previous loan and assignment of accounts was made. That stipulation was that the assigned accounts should stand as security for the payment of the earlier debt, as well as for the loan then made. The making of that loan was a valid consideration for the assignment of the accounts as security for a pre-existing debt. Peters v. Merchants' & Farmers' Bank, etc., 149 Fed. 373, 79 C. C. A. 193; Jones on Pledges, § 361 (2d Ed.); 1 Brandt on Suretyship and Guaranty (3d Ed.) § 26, and note 16; Johnston v. Nichols, 1 Com. B. 250; Boyd v. Moyle, 2 Com. B. 644; Burgess v. Eve, L. R. 13 Eq. 450; Morrell v. Cowan, L. R. 7 Ch. Div. 151; Leask v. Scott, L. R. 2 Ch. Div. 376; Sitgreaves v. Farmers' & Mechanics' Bank, 49 Pa. St. 359; Buchanan v. International Bank, 78 Ill. 500.

The assignment was an executed agreement, and was not an agreement to be subsequently performed. No facts are found by the referee which impeach the good faith of the assignment. There is no finding that at the time it was made the Martin Company was in contemplation of bankruptcy or was then insolvent. That being so, the right of the bank attached when the agreement was made and would not be displaced by the subsequent bankruptcy of the assignor.

The order complained of in the petition for review must be reversed, with costs, and the original order allowing the complainant's claim as a secured claim will be restored.