In re ALABAMA COAL & COKE CO.

(District Court, W. D. Kentucky. December, 1913.)

1. BANKRUPTCY (§ 198*)—LIENS—ATTACHMENT—DISSOLUTION—PRESERVATION FOR BENEFIT OF ESTATE.

Bankr. Act July 1, 1898, c. 541, § 67f, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3450), provides that all levies, attachments, or other liens obtained through legal proceedings against a person who is insolvent at any time within four months prior to the filing of a bankruptcy petition shall be null and void in case he is adjudicated a bankrupt, unless the court shall order the lien preserved for the benefit of the estate, etc. *Held*, that such section dissolves all attachments obtained within four months before the

beginning of the proceeding if it results in an adjudication, though the lien obtained by the levy may be preserved for the benefit of the estate, subject to the exception that the section does not impair the title obtained by a bona fide purchaser for value who shall have acquired the property without notice or reasonable cause for inquiry.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 289, 296–316; Dec. Dig. § 198.*]

2. BANKRUPTCY (§ 203*)—CLAIMS—LIENS—VALIDITY.

Where a bankrupt within four months prior to adjudication borrowed funds from claimant bank with which to liquidate the bankrupt's pay roll, and in good faith pledged certain accounts receivable as security for the loan, the bank taking under circumstances entitling it to the position of a purchaser for value without notice or reasonable cause for inquiry, as provided by Bankr. Act July 1, 1898, c. 541, § 67f, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3450), was entitled to the benefit of its security as against the lien of an attachment levied after the assignment, and sought to be preserved for the benefit of the estate.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 203.*]

In Bankruptcy. In the matter of bankruptcy proceedings of the Alabama Coal & Coke Company. On petition of the Bank of Waverly to review an order allowing its claim and a lien on specified accounts owned by the bankrupt against certain debtors and assigned to the bank, but denying its claim to a lien on the proceeds of one of such assigned claims against the Illinois Central Railroad Company. Reversed, with directions to allow the claim as secured to its full extent, and against the proceeds of the claim against the railroad company.

Drury & Drury, of Morganfield, Ky., for Bank of Waverly.

Vance & Heilbronner, of Henderson, Ky., for trustee and creditors.

EVANS, District Judge. On February 18, 1913, P. A. Blackwell & Co., instituted an action at law in the Henderson circuit court against the Alabama Coal Company upon an open account for $1,043.07. In their petition they alleged that the defendant had no property at that time in the state of Kentucky subject to execution, or not enough thereof to satisfy plaintiff's demand, and that the collection of said demand would be endangered by delay in obtaining judgment or a return of no property found. Upon this allegation and under the Code of Practice (Ky.) § 194, they prayed for and obtained an order of attachment directed to the sheriff of Henderson county upon which the plaintiff's attorneys made the following indorsement:

"The object of this attachment is to attach in the hands of the Illinois Central Railroad Company, any money or other thing owing by it to the Alabama Coal Company, or any of the defendant's property in the possession of said Illinois Central Railroad Company, to amount sufficient to satisfy plaintiff's demand sued on and the costs of this action.

"Vance & Heilbronner, Attorneys for Plaintiff."

The sheriff's return on the order of attachment is as follows:

"Executed on the within named Illinois Central Railroad Company by delivering to Geo. H. Waltz agent a true copy hereof Feb. 18, 1913, also on

Alabama Coal Company by delivering to A. M. Hobson agent a true copy hereof. This Feb. 29th, 1913.

"A. H. Abbott, S. H. C., by R. B. Eastin, D. S."

The summons issued by the clerk in the action was also directed to the sheriff of Henderson county, whose return thereon is as follows:

"Executed on the within named Alabama Coal Company by delivering to A. M. Hobson agent a true copy hereof. This Feb. 29, 1913.

"A. H. Abbott, S. H. C., by A. Hatchett, D. C."

On February 26, 1913, the plaintiffs P. A. Blackwell & Co., filed an amended petition, wherein they state:

"That by oversight the defendant in this action was styled Alabama Coal Company, whereas its true name is Alabama Coal & Coke Company."

In this amended pleading the plaintiffs restate their cause of action in full, and also their grounds for an attachment, and caused another order of attachment and another summons to be issued thereon in due form, and each of which was directed to the sheriff of Henderson county. On this attachment was also placed an indorsement in this language:

"The object of this attachment is to attach in the hands of the defendant, Illinois Central Railroad Company, any money, or other thing owing by it to the defendant Alabama Coal & Coke Company, or any property of the Alabama Coal & Coke Co., in its hands to an amount sufficient to pay plaintiffs' demand, and the costs of this action.

"Vance & Heilbronner, Attorneys for Plaintiff."

The sheriff returned the order of attachment:

"Executed on the within named Illinois Central Railroad Company by delivering to Geo. H. Waltz agent a true copy hereof. This April 8th, 1913.

"A. H. Abbott, S. H. S., by R. B. Eastin, D. S."

On the summons on the amended petition the sheriff made this return, to wit:

"Executed on the within named Illinois Central Railroad Company by delivering to Geo. H. Waltz agent a true copy hereof Feb. 26, 1913, also on Alabama Coal & Coke Company by delivering to A. M. Hobson agent a true copy hereof. This Feb. 29, 1913. A. H. Abbott, S. H. C. By R. B. Eastin, D. S."

The railroad company, though summoned as a garnishee, was never otherwise a party to the suit brought by Blackwell & Co. against the bankrupt.

Answering as a garnishee the order of attachment, the Illinois Central Railroad Company denied any indebtedness at that time, but subsequently, on the 30th day of May, 1913, it paid to the trustee the sum of $1,445.66, and apparently this sum was due in February previously when the orders of attachment were issued.

This proceeding in bankruptcy was begun by certain creditors on March 8, 1913, and with the consent of the bankrupt the adjudication was made on April 1st, following. These two last-named dates being less than four months after the orders of attachment were issued, that fact, per se, discharged the attachment so far as the plaintiffs P. A. Blackwell & Co., were concerned; but under section 67f of the Bank-

ruptcy Act the latter, as well as the trustee, petitioned that the lien of the attachment might be preserved for the benefit of the estate, and an order to that effect was entered by the referee, and the propriety thereof has not been questioned.

On February 22, 1913, the bankrupt executed in Union county, Ky., its note payable on demand to the Bank of Waverly, located at Waverly in that county, for $1,300 for money simultaneously loaned to the bankrupt to satisfy its pay roll, which pay roll represented the sums then due the laborers in its mines, and to secure the payment of the note the bankrupt assigned and pledged to the bank as collateral security certain accounts it had against divers individuals, including the Illinois Central Railroad Company. The bank proved its debt as one secured by the assignment and pledge referred to. Blackwell & Co. filed written objections to the allowance of the bank's claim as a secured debt. These objections were stated as follows:

"They deny that the Bank of Waverly on February 22, 1913, or at any other time, loaned to the bankrupt, the sum of ($1,300.00) thirteen hundred dollars to meet a pay roll, or that simultaneously with the execution of said loan or advancement thereof, the bankrupt assigned or transferred to the Bank of Waverly any accounts for coal mined or sold by the bankrupt at Waverly, Ky., during the first half of the month of February, or that said bankrupt so transferred or assigned any of the accounts mentioned in said bank's proof of claim filed herein. That, if the Bank of Waverly ever loaned to the bankrupt the sum of ($1,300.00) thirteen hundred dollars, or any other sum, it loaned same prior to February 22, 1913, and before the assignment or transfer of any of said accounts by the bankrupt to said bank, and within four months before the adjudication of bankruptcy herein, and said assignment is and was a preference under the Bankruptcy Act of 1898 and amendments thereto. Wherefore petitioners ask that the said claim be disallowed as a preferred claim, and if claim has been allowed as a preferred claim that the same be reconsidered by this court and the order allowing same to be set aside and held for naught and claim expunged."

Subsequently they filed what they called an amendment of their objections. In their amendment they only stated the facts respecting their attachments, and prayed that the lien thereof might be preserved for the benefit of the bankrupt's estate. They made no averment that the bank had any "notice" of the attachments when the pledge was made to it, nor did they make any allegation that the bank had any "reasonable cause for inquiry" when it loaned the money to the bankrupt which the pledge secured. Subsequently the trustee joined in and adopted all this.

After a hearing, the referee, on October 10, 1913, entered an order as follows:

"The objections of P. A. Blackwell & Co. and E. R. Morton, trustee, to the allowance of the claim of the Bank of Waverly as a lien claim, and the petition of the said Blackwell & Co. and the said trustee that the attachment lien obtained by the said Blackwell & Co. by suit in the Henderson county, Ky., circuit court be preserved for the benefit of the estate of the above-named bankrupt, having been heard, it is adjudged and ordered that the said objections be and the same are hereby overruled as to all of the accounts assigned, except as to the sum of $1,043.07 of the account against the Illinois Central Railroad Company, the amount covered by the attachment of the said Blackwell & Co.; and that the said objections and petition be and the same are hereby sustained as to the sum of $1,043.07 of the amount of the

said Illinois Central Railroad Company; and that the said attachment lien be and the same is hereby preserved for the benefit of the said estate.

"It is further adjudged and ordered that the claim of the said Bank of Waverly be and the same is hereby allowed for the sum of $1,300, with interest from the 22d day of February, 1913, to the 8th day of March, 1913, with a lien upon the proceeds of the accounts against J. B. Easley & Son for $172; Broadway Coal & Ice Company for $24; Crescent Coal Company for $45; and $402.59 of the proceeds of the account against the Illinois Central Railroad Company."

The Bank of Waverly, by its petition filed on October 16th, claims that this order was erroneous in this, that thereby its claim was not adjudged to be a superior lien upon the entire account against the Illinois Central Railroad Company, and, upon that ground, seeks a review thereof.

In a written opinion the learned referee bases his order upon three propositions: (1) That the attachment created a lien under the law of Kentucky; (2) that the error in the name of the defendant in P. A. Blackwell & Co.'s suit was immaterial; and (3) that the Supreme Court having held in First National Bank v. Staake, Trustee, 202 U. S. 141, 26 Sup. Ct. 580, 50 L. Ed. 967, and Rock Island Plow Co. v. Reardon, Trustee, 222 U. S. 354, 32 Sup. Ct. 164, 56 L. Ed. 231, that the attachment lien in such cases shall be preserved for the benefit of the estate, that therefore the Bank of Waverly must be excluded from the benefit of its pledge to the extent of $1,043.07, the amount of Blackwell & Co.'s debt. We need not question the accuracy of the referee's view that the attachment was valid, and that the misnomer was immaterial, nor the accuracy of his conclusion that the benefit of the lien of Blackwell & Co.'s attachment should be preserved for the benefit of the bankrupt's estate; but neither of these propositions reaches far enough to be of any decisive importance. The two cases cited by the referee obviously adjudicated claims entirely different from that of the Bank of Waverly.

[1] Section 67f of the Bankruptcy Act dissolves all attachments obtained within four months before the beginning of the bankruptcy proceeding if it results in an adjudication, though the lien obtained by the levy of the attachment may be preserved for the benefit of the estate. The section, however, provides that this shall not affect or destroy or impair the title obtained in the meantime by a "bona fide purchaser for value who shall have acquired the same without notice or reasonable cause for inquiry."

In Collier on Bankruptcy (9th Ed.) p. 971, it is said:

"The proviso at the end of subsection 'f' corresponds to subsection 'd,' which has reference to liens other than through legal proceedings, as well as to a clause in the body of subsection 'e,' saving bona fide transactions from the penalties attending fraudulent transfers. It is also expressive of the law, and seemingly inserted for reasons of caution only."

Without copying the part of subsection "e" to which reference is made, it may be well to say that subsection "d" of section 67 is in this language:

"Liens given and accepted in good faith and not in contemplation of or in fraud upon this act, and for a present consideration, which have been recorded

according to law, if record thereof was necessary in order to impart notice, shall, to the extent of such present consideration only, not be affected by this act."

The law of Kentucky, it may be noted, does not require that pledges, such as that made in this instance, shall be recorded.

[2] Assuming, as the referee properly did, under authorities like Sexton v. Kessler, 225 U. S. 90, 32 Sup. Ct. 657, 56 L. Ed. 995, 28 Am. Bankr. Rep. 85, and Ward v. First National Bank of Ironton, Ohio (C. C. A., 6th Cir.) 29 Am. Bankr. Rep. 312, 202 Fed. 609, 614, 12 C. C. A. 655, that the pledge of the collaterals carried title to the same as a valid security for the debt unless overreached by the attachment of the funds in the hands of the Illinois Central Railroad Company, we have concluded that the question now under consideration is not to be determined upon the doctrine of lis pendens, which was much urged at the argument, but must be determined upon the objections actually made to the bank's claim, and which constituted the pleadings on that phase of the subject, or else upon the proviso contained in section 67f if we can fairly bring the objections within that proviso. Instead, however, of opposing the bank's claim to priority upon the two grounds specified in the proviso in section 67f, the trustee and the objecting creditors in their original written objections based their opposition, first, upon a denial that the bank had loaned the money; second, upon the statement that simultaneously with the execution of the note the collaterals were not assigned or pledged to secure it; and, third, without stating the facts showing the preference, the legal conclusion is averred that the assignment of the accounts as collateral was a fraudulent preference. In the amendment to their objections they allege, as we have seen, the facts in reference to the attachment in the Blackwell & Co. suit, claim that the lien of that attachment should be preserved for the benefit of the estate, and assert that the Bank of Waverly's lien, if it had any, was subordinate to the lien of the attachment. Nothing was said in the objections as amended which insisted upon the equitable doctrine of lis pendens, nor was it claimed that under the proviso the bank either had "notice" or "reasonable cause for inquiry." Nor was the least proof offered of facts which would establish a preference under cases like First National Bank v. Holt (C. C. A., 6th Cir.) 18 Am. Bankr. Rep. 766, 155 Fed. 100, 84 C. C. A. 16, and In re Pfaffinger (D. C., Ky.) 18 Am. Bankr. Rep. 807, 154 Fed 523. The proof was perfectly clear that the bank did lend the money evidenced by the note filed with its proof of debt, and that simultaneously therewith the bankrupt in good faith pledged and assigned the accounts to secure the loan. The trustee and objecting creditors entirely failed to show that there was any unlawful or fraudulent preference. So that, while the attachment was preserved for the benefit of the estate, that result was subordinate to the superior lien and title of the pledgee bank.

This would seem to conclude the case upon all questions actually raised by the parties, but if we may assume (as we certainly do not, in fact) that the record somewhere or somehow adequately shows objections under the proviso in section 67f of the allowance of the

bank's claim as one entitled to priority, then Congress, having expressly specified in that proviso the precise conditions upon which a bona fide title is to be protected and sustained, we need not go beyond those conditions, because Congress, having included all the conditions it chose to give any force, by that inclusion excluded all other conditions. Those conditions were: (1) "Notice"; and (2) "reasonable cause for inquiry." As we have seen, the trustee and objecting creditors failed to allege the existence of either of those conditions. There was neither allegation nor proof that the bank, when it lent the money and took the collateral in pledge, had any notice of the suit in Henderson county in which service upon the bankrupt was not had until the 29th of February—one week after the loan was made by and the collaterals assigned and delivered to the bank. Nor was there either allegation or proof that the bank had notice of the bankrupt's insolvency. It may not be amiss in this connection to say that the creditors' petition for the adjudication shows that the bankrupt is a Kentucky corporation having its chief place of business in the town' of Waverly, in Union county, in this state. On February 22, 1913, it applied for and obtained from the bank of Waverly the loan of $1,300 for the purpose of meeting its pay roll. The proof shows that the money thus obtained was intended to be and in fact was promptly devoted to the payment of the amounts due its laborers. The borrower being engaged in mining, these laborers, under section 2487 of the Kentucky Statutes as amended, were entitled to priority in case of bankruptcy. Had the bank taken the precaution to have had the claims of these laborers assigned to it, subrogation to their rights would have been undeniable. This has been frequently decided by this court, and the right of the laborer to assign such claims is valuable in enabling him oftentimes to get his money long before the final settlement of the estate. Instead of taking assignments of the claims of laborers, the bank took other collateral. These facts seem to add strength to its equity and at least tends to show good faith and the absence of notice and reasonable cause for inquiry.

After a very careful consideration, we have reached the conclusion that the referee erred in not allowing the claim of the Bank of Waverly as one secured to its full extent and in not giving a lien upon the money collected upon the account of the bankrupt against the Illinois Central Railroad Company which was pledged to the bank, for the payment of such parts of its entire debt as were not paid out of the other collaterals mentioned in the referee's order of October 10th. Consequently the petition for a review must be granted, and the order of the referee reversed, with directions to allow the claim of the Bank of Waverly as a secured claim, and to cause the same to be paid in full out of the money collected by the trustee from the Illinois Central Railroad Company.