## Continental & Commercial Trust & Savings Bank, Trustee, Appellant, v. Breen & Kennedy et al., Appellees.

### Gen. No. 19,757.

1. BANKRUPTCY, § 23*—*proof of preferential payment.* To charge a creditor of a bankrupt with a preferential payment the trustee is required to prove not only that the bankrupt made a payment which had the effect of a preference, but also that the creditor had reasonable cause to believe that a preference was intended; it is not sufficient to prove that the creditor had knowledge of facts and circumstances sufficient to put him on inquiry to ascertain whether the debtor was insolvent and that the payment was intended as a preference.

2. BANKRUPTCY, § 23*—*persons chargeable with preferential payments.* An indorser or guarantor of a note of a bankrupt is a creditor within the meaning of section 60 b of the Bankruptcy Act so as to charge him with a preferential payment made to the holder of the note, and both the owner of the note and the indorser or guarantor may be charged for the receipt of a preferential payment to the holder, but only the amount by which the assets of the estate have thereby been depleted must be returned.

3. BANKRUPTCY, § 23*—*when evidence insufficient to charge defendants with preferential payments.* In an action against two defendants to recover preferential payments made to them by a bankrupt within four months from the time the bankruptcy petition was filed, evidence *held* insufficient to prove that either defendant had reasonable cause to believe that a preference was intended.

4. ACTION, § 32*—*when action is in contract.* An action by a trustee of the estate of a bankrupt against two defendants to recover a certain sum of money alleged to have been paid as a preference, *held* to be an action in contract, requiring plaintiff to prove his cause of action against both defendants.

Appeal from the Municipal Court of Chicago; the Hon. HOSEA W. WELLS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1913. Affirmed. Opinion filed October 6, 1914.

. **Statement by the Court.** On April 22, 1912, plaintiff, as trustee of the estate of Minor T. Jones, bankrupt, filed a *praecipe* in the office of the clerk of the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Municipal Court of Chicago, in an action of the first class, directing the issuance of a summons against Breen & Kennedy, a corporation, and Andrew J. Graham, doing business as Graham & Sons, as defendants, "in a plea of trespass on the case on promises." The summons was issued and served upon both defendants, and they entered their appearance.

Plaintiff's second amended statement of claim alleged, in substance, that plaintiff's claim was for the recovery, as trustee of the estate of Minor T. Jones, bankrupt, of "certain preferential payments" made by said Jones; that on March 23, 1909, an involuntary petition in bankruptcy was filed against said Jones, and on April 24, 1909, he was duly adjudicated a bankrupt; that on January 15, 1909, within less than four months prior to the filing of the petition, Jones paid out of his assets a promissory note, previously given by him, for $1,000 with interest thereon, which note was due on or about January 1, 1909; that on February 15, 1909, he also paid out of his assets four promissory notes, previously given by him, each for $1,000 and due respectively on or about February 1, March 1, April 1, and May 1, 1909, only the first of which notes being due at the time of said payment; that to pay said five notes and accrued interest said Jones paid out of his estate the total sum of $5,457.50; that the same "were paid to Graham & Sons, bankers, *either* for their own personal benefit, *or* for the use of Breen & Kennedy, a corporation, one of the defendants, *or* for the use and benefit of both Graham & Sons and Breen & Kennedy;" that on January 15, 1909, and for some time prior thereto, and on February 15, 1909, "Graham & Sons and Breen & Kennedy, *or either or both of them,* were well informed or had knowledge of facts sufficient to charge them with notice," that the said Jones was insolvent, and that the payment of said $5,457.50 by said Jones "would necessarily operate as a preference by the bankrupt in favor of said Graham & Sons and said Breen & Kennedy, *or which-*

*ever of them* were real beneficial owners of said notes;'' that on May 11, 1911, plaintiff was duly appointed trustee of said bankrupt's estate and has been allowed by the United States Court to bring this suit in behalf of said estate; and that "plaintiff desires to recover of said Graham & Sons *or* said Breen & Kennedy, *or either or both of them,* or whichever one of them shall have received the benefit thereof, the said sum of $5,457.50, with interest thereon at the rate of five per cent. per annum from February 15, 1909, * * * being preferential payments to said defendants, *or either or both of them,* within the purview of the acts of bankruptcy of 1898 and the amendments thereto." To this second amended statement was attached an affidavit of an agent of plaintiff to the effect that the suit was "for the recovery of money only," that the nature of plaintiff's demand was "for money paid to said defendants as a preference," and that there was due to plaintiff from the defendants, after allowing all just credits, etc., the sum of $5,457.50 with interest from February 15, 1909.

The defendants filed separate affidavits of merits. The affidavit on behalf of the defendant Andrew J. Graham was made by an agent, Frank J. Graham, and it was therein admitted that said Jones paid certain of his promissory notes within four months prior to March 23, 1909, to said Andrew J. Graham, but it was stated that "all said payments were made to his (Graham's) own use alone and not to the use of Breen & Kennedy," and that this defendant (Graham) "had no knowledge of any facts charging this defendant with notice that said Jones was insolvent or that the payment of said notes would operate as a preference by the alleged bankrupt in favor of this defendant." The affidavit of merits on behalf of Breen & Kennedy was made by the secretary of that corporation, and it was therein denied that said bankrupt paid any sums of money either directly to said defendant or to Andrew J. Graham for the use of said defendant within

said four months prior to March 23, 1909, and denied that said defendant had any knowledge, or notice of any facts charging it with knowledge, that said Jones, when he paid said sums to said Graham, was insolvent or that said payments would operate as a preference.

The case was tried before a jury. It was stipulated that on March 23, 1909, an involuntary petition in bankruptcy was filed in the United States District Court, for the Northern District of Illinois, against Minor T. Jones; that on that date his assets amounted to $4,305, and that his liabilities to 148 unsecured creditors amounted to $136,915; that on April 24, 1909, he was adjudicated a bankrupt and that plaintiff was appointed trustee. The plaintiff called the bankrupt, Jones, as a witness, who testified that on January 15, 1909, he paid to Graham & Sons, out of his assets, a note for $1,000 with the accrued interest thereon, and that on February 15, 1909, he also paid to Graham & Sons, out of his assets, four notes for $1,000 each, with accrued interest thereon, and that the total sum paid to take up said five notes was $5,437.50. It was shown that at the time of the making of said payment Jones was in fact insolvent. Plaintiff, to sustain the allegations of its second amended statement of claim that at the time of said payments the defendant Graham or the defendant Breen & Kennedy, or both, had knowledge that Jones was insolvent and that said payments would necessarily operate as a preference in favor of both defendants, or whichever of them was the beneficial owner of said notes, examined Jones at considerable length, and also cross-examined under section 33 of the Municipal Court Act (J. & A. ¶ 3345) the defendant Andrew J. Graham and A. B. Gillespie, secretary of Breen & Kennedy, and also called as witnesses two court stenographers who had reported the prior examinations had in the bankruptcy court of the defendant Graham and of Martin J. Breen, former president of Breen & Kennedy, who was dead at the time of the trial. The plaintiff also introduced certain

documentary evidence.    To avoid the necessity of plaintiff proving what percentage would be paid upon the claims of the general creditors, a stipulation was entered into to the effect that said payments on said notes would enable the person receiving them, or to be benefited thereby, to obtain a greater percentage of his debt than other creditors of the same class.    At the close of plaintiff's evidence each defendant presented a written motion that the court instruct the jury to find the issues in favor of said defendant, which motions the court granted and instructed the jury accordingly.    The jury returned a verdict finding the issues against plaintiff, and subsequently the court, after overruling a motion for a new trial, entered judgment against plaintiff for costs, which judgment plaintiff by this appeal seeks to reverse.

From the evidence introduced by plaintiff the following facts, in substance, appear:    Minor T. Jones had been conducting a large restaurant and bar on premises, known as 175 Jackson boulevard (old number) in the city of Chicago, owned by David B. Mayer, and of which premises Jones had a lease, dated June 1, 1906, and running to April 30, 1916.    The lease provided that in case the premises should be rendered untenantable by fire the lessor might terminate the lease, or repair the premises within thirty days, and failing to do so, or upon the destruction of the premises by fire, the term created should cease and determine. On the night of January 1, 1909, the restaurant was practically destroyed by fire, and Jones within a day or two moved to a nearby location, where until the filing of the bankruptcy petition he conducted a smaller restaurant, bar and cigar store.    He testified that his landlord, Mayer, promised to repair the burned premises; that he (Jones) considered his leasehold worth about $50,000 and the good-will of his business worth about $25,000; that just prior to the fire the value of his stock of merchandise was about $7,000 and the

equipment had cost him about $20,000; that he collected about $22,000 insurance on stock and equipment, about $16,000 of which was payable to and was paid to a Mr. Lenori of New York; that he expected to resume business at his old location when the premises were repaired, but that shortly before the filing of the petition in bankruptcy his landlord advised him that he would not repair the premises and had decided to cancel the lease. The defendant Breen & Kennedy was in the wholesale liquor business, and from time to time had sold merchandise to Jones on credit. About October 1, 1907 (about fifteen months before the fire), Jones owed Breen & Kennedy approximately $22,000, which the latter was urging Jones to pay. The defendant Graham was then in the habit of taking his noonday lunch in Jones' restaurant, and Jones told Graham that he wanted to borrow $20,000, in order to pay that sum to Breen & Kennedy, and after several interviews were had Graham agreed to loan Jones the money. Jones executed a series of twenty notes each for $1,000, dated October 1, 1907, payable to the order of himself and by him indorsed, and due at monthly intervals on the fifteenth day of the month, the last of which notes matured on June 15, 1909. Jones testified that he took the notes over to the bank of Graham & Sons and gave them to a teller, with instructions to credit the proceeds to Breen & Kennedy; that he did not deliver to anyone any collateral or security on said notes, and that shortly after the delivery of the notes he received a statement from Breen & Kennedy crediting him with the sum of $20,000 and showing a balance due of about $2,000. No indorsement or guaranty of said notes was placed thereon by Breen & Kennedy. All of said notes which matured before the fire were paid by Jones as they became due. After the fire Jones paid the note maturing January 15, 1909, together with accrued interest, at Graham & Sons' bank, partly out of the income

received from the operation of said smaller restaurant and bar, and partly out of certain insurance money received. Some time in February Jones paid the note maturing February 15, 1909, and also paid three other notes, together with accrued interest, maturing in March, April and May, out of the insurance money received. Jones testified that he made these payments to the teller at the bank; that he did not have money enough to take up the last remaining note, maturing June 15, 1909; that his object in making said January and February payments was to keep his credit good with Graham, as at that time he was expecting that the burned premises would be repaired and that he would there re-establish himself; that his object in paying the notes which had not yet matured was to stop the interest; and that after the fire he did not see or talk with Graham about his affairs.

The defendant Andrew J. Graham testified that at the time he took the notes from Jones in October, 1907, he investigated the financial condition of Jones, the same as he would any other customer; that he ascertained that Jones owed about $50,000 and that his assets were about $150,000; that he did not get from Jones a detailed statement of his liabilities; that he knew Jones owed Breen & Kennedy and that the money loaned was going to its credit; and that there was no legal liability on the part of Breen & Kennedy on any of said series of notes. The witness produced a loose-leaf taken from a bills receivable ledger of his bank, showing the Jones account,—the debiting of the last fifteen of said notes, and the credit payments of fourteen of said notes. At the top of said leaf were the words "Account No. 2" and "Discounted for Minor T. Jones (B & K)." The witness stated that the words "Account No. 2" might refer to the fact that five of the twenty notes were sold to another bank and that account No. 1 might relate to those five notes. The witness also stated that he knew of no other significance to the memorandum "B & K" than that

Breen & Kennedy got credit for the notes. The witness refused to bring into the court the ledger from which said leaf was taken and certain other books of the bank, but it was agreed that counsel for plaintiff might examine said books at the bank, and the witness testified on the following morning that counsel had made such examination at the bank. The witness further testified that his bank had no book of record of guarantors, and that when notes were received from customers the notes themselves would show whether or not there was any secondary or guarantor's liability.

Frank M. Harker, a court reporter, testified that on November 5, 1909, Martin J. Breen, president of Breen & Kennedy, was examined in the bankruptcy proceedings and that he (Harker) took down in shorthand the questions put to Breen and the answers given thereto. The witness read from his notes, showing that Breen then testified in part that in October, 1907, Breen & Kennedy got credit at Graham & Sons' bank for $20,000 on said Jones' notes; that said notes were not indorsed by Breen & Kennedy, nor did Breen & Kennedy guaranty the payment of said notes in any way; that he (Breen) never told Graham that he would see that said notes would be paid, or ever gave Graham a written guaranty or letter to that effect, and that neither he nor any officer of Breen & Kennedy ever entered into any agreement, written or oral, to hold Graham harmless on said notes; that Breen & Kennedy after October, 1907, continued to extend credit to Jones, and at the time of the filing of the bankruptcy petition Jones owed it on open account the sum of $22,794; that after the fire he had several talks with Jones about the latter continuing the business and getting the premises repaired; that he never asked Jones for security for or payment of said open account, but let him go ahead and adjust his insurance, etc.; that he (Breen) left Chicago on January 23, 1909, and did not return until March 5, 1909; and that the immediate

cause of the filing of the bankruptcy petition by Breen & Kennedy and others was the change in Mayer's attitude in regard to reinstating Jones in the premises on favorable terms.

It appears from the testimony of Graham and of Gillespie, secretary of Breen & Kennedy, that after the death of Martin Breen in 1911 a settlement of all business affairs existing between Graham & Sons and Breen & Kennedy, and Martin Breen personally, was had; that at that time the last of said series of notes (the one maturing June 15, 1909, and which Jones did not pay) was turned over to Breen & Kennedy, and at the time of the trial this note was in its possession; and that neither Breen & Kennedy nor Graham & Sons ever filed any claim therefor in the bankruptcy proceedings.

Henry Horner and Lloyd C. Whitman, for appellant; Lloyd C. Whitman, of counsel.

Ryan & Condon, for appellees; Irvin I. Livingston and Leon Lewis, of counsel.

Mr. Justice Gridley delivered the opinion of the court.

Section 60a of the Bankruptcy Act provides, in substance, that a person shall be deemed to have given a preference if, being insolvent, he has within four months before the filing of the petition made a transfer of any of his property, and the effect of such transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. Section 60b of said Act, in force in 1909, provides that "if the bankrupt shall have given a preference and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person."

The evidence introduced by the plaintiff (the trustee) in this case showed that the bankrupt, Jones, within four months before the filing of the involuntary petition in bankruptcy against him and while he was in fact insolvent, made two payments aggregating the sum of $5,437.50, out of his assets, to the defendant Andrew J. Graham, doing business as Graham & Sons, bankers, to take up five notes previously given by him, and it was stipulated, in substance, that the effect of such payments enabled Graham, or the person benefited, to obtain a greater percentage of his debt than other of Jones' creditors of the same class.

Counsel for plaintiff contend, in substance, that the trial court erred in instructing the jury, at the close of plaintiff's evidence, to find the issues in favor of both defendants and in entering judgment against the plaintiff, (1) because the evidence tended to prove that Jones gave a preference and that *both* Graham, who received the preference, and Breen & Kennedy, who was benefited thereby, had reasonable cause to believe that a preference was intended; and (2) because the action was one in tort, and the evidence tended to prove that Jones gave a preference and that *either* Graham *or* Breen & Kennedy had reasonable cause to believe that a preference was intended. As to the second contention, counsel state in their reply brief: "The question turns on the form of the action. If the action was an action in contract and this court is of the opinion that the appellant failed to make out a case against one appellee, this court will affirm the judgment of the trial court in favor of both appellees."

In order to recover in this case, the trustee was required to prove by sufficient evidence not only that the bankrupt had made a payment which had the effect of a preference, as defined in said section 60a, but also that the defendants had reasonable cause to believe that a preference was intended. *Debus v. Yates,* 193

Fed. 427; *Kimmerle v. Farr,* 111 C. C. A. 27, 189 Fed. 295. When a debtor pays, and a creditor receives, the amount of a just debt, the natural presumptions are in favor of the good faith of the transaction, and the burden of proof to show that the creditor had reasonable cause to believe that a preference was intended is upon the trustee. *Tumlin v. Bryan,* 91 C. C. A. 200, 165 Fed. 166, 168; *Getts v. Janesville Grocery Co.,* 163 Fed. 417, 420; *Chisholm v. First Nat. Bank of Leroy,* 176 Ill. App. 382, 390. The creditor must have reasonable cause to believe (1) that the debtor was in fact insolvent and (2) that the debtor intended by the payment to give him a preference. Counsel for plaintiff contend that the test is whether the facts and circumstances within the knowledge of the creditor are sufficient to put him on inquiry to ascertain whether the debtor was insolvent and that the payment was intended as a preference. We do not so construe the act. In *Blankenbaker v. Charleston State Bank,,* 111 Ill. App. 393, 394, it is said: "The creditor is bound only by the information he has at the time he receives payment and is not obliged to trace to the ultimate any suspicious circumstances that may exist within his knowledge, to ascertain whether such payment would be void within the law. Neither is it enough that a creditor has some cause to suspect that payment to him was intended as a preference." See also *Grant v. National Bank,* 97 U. S. 80; *Powell v. Gate City Bank,* 178 Fed. 609, 617; *Tumlin v. Bryan, supra.* And the reasonable implication of the statute is that the debtor himself must have intended to give a preference. *Tumlin v. Bryan, supra; In re First Nat. Bank of Louisville,* 84 C. C. A. 16, 155 Fed. 100, 103; *Hardy v. Gray,* 75 C. C. A. 562, 144 Fed. 922, 925. And "a presumption of law that the debtor intended to give a preference does not arise from the fact alone that he knew himself to be insolvent. * * * It will often, if not generally, happen that a person, though in fact insolvent, will, while continuing his business in the usual

way, make payments without a thought of disparagement of other creditors and with confidence in his ability to pay them all.  *  *  *  Neither is the creditor's belief that the debtor is insolvent in itself equivalent to a belief that he intends a preference.  *  *  *  The creditor *  *  * 'may share in the confidence of his debtor, and may well suppose that the debtor while paying him his debt in the common course of business is acting without any purpose of giving special favor.' " *Kimmerle v. Farr,* 111 C. C. A. 27, 189 Fed. 295, 300.

After a careful consideration of the evidence we are of the opinion that plaintiff did not sufficiently prove that when Jones made said payments to Graham in January and February, 1909, he intended to give a preference, or that Graham, when he received those payments, had reasonable cause to believe that a preference was intended. Though Jones may have known he was insolvent at the time, the evidence shows that when he made said payments he, relying on his landlord's promise to rebuild the burned premises, expected to re-establish his former large restaurant business there, and wanted to keep his credit good with Graham and stop the running of interest on said notes. And the evidence does not tend to show that at the time of the receipt of said payments Graham, or any one connected with his bank, knew of Jones' actual financial condition, or had made any investigation thereof subsequent to October, 1907. Indeed, the evidence shows that Graham did not personally see Jones or communicate with him from the time of the fire until after the filing of the bankruptcy petition. The fact that Graham may have known that the February, 1909, payment included three notes not yet due is not conclusive that Graham had reasonable cause to believe that a preference was intended. *Sparks v. Marsh,* 177 Fed. 739, 743.

It is the law that an indorser or guarantor of a note of a bankrupt is a creditor within the meaning of section 60b of the Bankruptcy Act, so as to charge him

with a preferential payment made to the holder of the note (*Swarts v. Siegel,* 54 C. C. A. 399, 117 Fed. 13; *Paper v. Stern,* 117 C. C. A. 346, 198 Fed. 642), and that both the owner of the note and the indorser or guarantor may be charged for the receipt of a preferential payment made to the holder, but that only the amount by which the assets of the estate have thereby been depleted must be returned. *In re George M. Hill Co.,* 64 C. C. A. 561, 130 Fed. 315, 318. Council for plaintiff, in substance, contend that the evidence showed that Breen & Kennedy was secondarily liable on said five notes which were paid to Graham, the holder, and that Breen & Kennedy was benefited by the preference given by Jones and had reasonable cause to believe that a preference was intended. We do not think that the evidence sufficiently proved either that Breen & Kennedy had reasonable cause to believe that a preference was intended or that Breen & Kennedy was secondarily liable on said notes. No indorsement or guaranty of Breen & Kennedy appeared on the notes, and according to the testimony of both Martin Breen and Graham there was no written agreement or oral promise made by Breen & Kennedy, or by Martin Breen individually in its behalf, to hold Graham harmless on the notes. It may be that Graham may have expected that Breen & Kennedy would make any loss thereon good, but it does not appear that Breen & Kennedy was under any legal liability to do so. Furthermore, it does not sufficiently appear that Breen & Kennedy advised, counseled or procured the payments to be made or that it had knowledge of the payments until after they had been made. *Reber v. Shulman,* 106 C. C. A. 110, 183 Fed. 564, 566.

And we are of the opinion that the action, as disclosed from plaintiff's second amended statement of claim and upon which the case was tried, is one in contract and not in tort. The action was for the recovery of a certain sum of money, with interest thereon from

a certain named date. In *Walter Cabinet Co. v. Russell,* 250 Ill. 416, 420, it is said: "The object of the rules requiring statements of claim and of set-off is to inform the parties of the nature of the respective claims, and  *  *  *  It is still the law in the Municipal Court, as in other courts, that a party is limited, in his evidence, to the claim he has made; that he cannot make one claim in his statement and recover upon proof of another without amendment. The issue is made by the statement of claim, and the evidence must be limited by that statement." Furthermore, the case appears to have been tried upon the theory that it was an action in contract, and the plaintiff should not be heard to say in this court that the action was one in tort. "A party is bound, in the Appellate Court, as to the nature and form of the action, by the theory on which it was tried. Thus, where a cause has been tried upon the theory that it is an action in tort, and not in contract, that theory will govern the cause in the Appellate Court." 2 Cyc. 671. This being an action in contract against two defendants, plaintiff was required to prove a cause of action against both. *Griffith v. Furry,* 30 Ill. 251, 255; *Cassady v. Trustees of Schools,* 105 Ill. 560, 565; *M. W. Powell Co. v. Finn,* 198 Ill. 567, 569. This, in our opinion, plaintiff did not do.

And we do not think that the trial court committed any prejudicial error in rulings on evidence, as contended by counsel.

The judgment of the Municipal Court is affirmed.

*Affirmed.*